UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JOHNNY RUIZ                                               :
                                                          :
                          Petitioner,                     :    **REPORT AND**
                                                          :    **RECOMMENDATION**
                - against -                               :
                                                          :    05 Civ. 10069 (CS)(PED)
JOHN BURGE, Superintendent,                               :
Auburn Correctional Facility,                             :
                                                          :
                          Respondent.                     :
                                                          :
----------------------------------------------------------x


TO:   THE HONORABLE CATHY SEIBEL
      UNITED STATES DISTRICT JUDGE


   Johnny Ruiz, currently confined at Green Haven Correctional Facility and proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On August 23, 2001, Ruiz was convicted after a jury trial in Westchester County Supreme Court (Molea, J.) of eight counts of robbery in the first degree and four counts of robbery in the second degree.[1] On November 16, 2001, he was sentenced to concurrent determinate terms of 15 years for each count of robbery in the first degree and 11 years for each count of robbery in the second degree. For the reasons stated below, the petition should be denied.

---

[1] Petitioner was tried with a co-defendant, Maxie Pettiford, who was likewise convicted as charged. Pettiford's petition for a writ of *habeas corpus*, which raised grounds which overlap with the instant petition, was denied "for want of merit" on January 31, 2006. Pettiford v. Burge, 05 Civ. 9412 (CLB). A third defendant, Ahmad Muhammad, pleaded guilty under a separate indictment. As indicated below, Mr. Muhammad testified as a defense witness in Petitioner's trial.

## BACKGROUND[2]

On the evening of August 10, 2000, a trio of robbers descended on Villarina Foods, a restaurant located at 49 Lawton Avenue in New Rochelle, New York. Present in the restaurant were a co-owner, Peter DeLillis, three employees, and party of seven patrons celebrating the 35th birthday of Marcy Samsky. During the course of a four minute encounter, the robbers displayed firearms and stole cash from the restaurant as well as cash and jewelry from restaurant patrons. One of the robbers also took DeLillis's keyring, and after the robbers fled DeLillis noticed that his Lexus automobile, which had been parked outside the restaurant, was gone.

Early the following morning, the stolen Lexus was recovered from one Monique Jacobs, who testified at trial that she had received the vehicle from an individual she knew as "Marley," subsequently identified as Ahmad Muhammad. Jacobs also knew Petitioner Ruiz and his co-defendant Maxie Pettiford, and had recently seen Muhammad together with Ruiz as well as with Pettiford.

One week after the Villarina Foods robbery, on August 17, 2000, Yonkers Police stopped a taxicab in which Muhammad was present along with Pettiford and Ruiz. (Muhammad was found to be in possession of a .38 caliber revolver and was arrested for gun possession.) After learning of this incident, New Rochelle detectives assembled photo arrays containing each of the three suspects. On August 24, 2000, Marcy Samsky selected Petitioner Ruiz's photograph from one of the arrays and identified him as the gunman who had robbed and threatened her on August 10. Ms. Samsky's husband, Lawrence Samsky, identified Maxie Pettiford from the arrays. On August 28, 2000, Javier Hernandez, one of the waiters from Villarina Foods, also

---

[2] Because I conclude – and recommend that your Honor should conclude – that each of Petitioner's claims is either time-barred or precluded by the doctrine of procedural default, I provide only a brief summary of the trial evidence.

2

selected Pettiford from one of the arrays. Ms. Samsky, who testified that she observed Ruiz at four different points during the robbery, also identified Petitioner at trial.

At trial, Ruiz presented an alibi defense, contending that at the time of the Villarina Foods robbery he had been visiting Dorette Mitchell, an ex-girfriend who had just given birth to his child, at Westchester Medical Center. Petitioner called Ms. Mitchell, her mother Joan Mitchell, and his father John Ruiz, Sr., each of whom testified in support of the alibi. Ruiz also called Ahmad Muhammad – the third defendant who had previously pleaded guilty – who testified that he had committed the robbery along with two other individuals not on trial.

Ruiz also sought to call as a defense witness one Gary Mercer, who had given detectives investigating the robbery a statement indicating that two other men named Robert Jones and Darryl Walker had told Mercer they had committed the robbery. After Mercer refused to testify on Fifth Amendment grounds, Ruiz: 1) requested that the prosecution immunize Mercer; and 2) sought to introduce Mercer's out-of-court statement. Both requests were denied.

On its rebuttal case, the state responded to the alibi defense by introducing surveillance videos from the hospital which contradicted Petitioner's contention that he had visited the facility at the time of the robbery. The state was also permitted to call a detective who was familiar with Petitioner's appearance in August 2000 (there was evidence that Ruiz looked different by the time of trial) to testify that he had viewed the hospital surveillance tapes and that Petitioner did not appear in the tapes.

The jury convicted Petitioner Ruiz on August 23, 2001. On November 16, 2001, Ruiz was sentenced to concurrent determinate terms of 15 years on the first degree robbery counts and 11 years on the second degree robbery counts.

**PROCEDURAL HISTORY**

On direct appeal to the Appellate Division, Second Department, Petitioner's counsel raised two issues: 1) a claim of error in the admission of "incomplete and misleading hospital security tapes to counter defendant's alibi defense"; and 2) a claim that the trial court erred in "allowing a prosecution witness to usurp the jury's function and testify that the defendant could not be seen on hospital security tapes[.]" See Brief for Defendant-Appellant Johnny Ruiz (annexed to Respondent's Memorandum as Ex. 1). Petitioner also submitted to the Appellate Division a *pro se* supplemental brief which raised two additional issues: 1) a claim that the trial court erred by denying the defendant the right to introduce relevant exculpatory evidence [Gary Mercer]; and 2) a claim that the prosecution failed to establish the defendant's guilt beyond a reasonable doubt. See Appellant's Supplemental Pro-Se Brief (annexed to Respondent's Memorandum as Ex. 3) On May 17, 2004, the conviction was affirmed. People v. Ruiz, 7 A.D.3d 737 (2d Dep't 2004.)

On July 8, 2004, Petitioner's counsel submitted a leave application to the Court of Appeals. See Letter of Barry E. Warhit, Esq., to Hon. Judith Kaye, Chief Judge, Court of Appeals, dated July 8, 2004 (annexed to Respondent's Memorandum as Ex. 6). The letter seeking leave raised only the issue concerning admission of the hospital surveillance tapes. Id. On August 26, 2004, the request for leave to appeal was denied. People v. Ruiz, 3 N.Y.3d 681 (2004).

Petitioner thereafter initiated this action by filing a Petition for a Writ of Habeas Corpus, which was dated October 15, 2005, was received by the court's *Pro Se* Office on October 24,

4

2005, and was docketed on November 30, 2005.[3] (D.E. 1) In his original petition, Ruiz raised the two issues which had been presented in his *pro se* Supplemental Brief to the Appellate Division: 1) the exclusion of exculpatory evidence claim pertaining to Gary Mercer; and 2) the sufficiency of the evidence claim.

Petitioner then submitted an Amended Petition, dated January 24, 2006, and filed on January 27, 2006. (D.E. 3) In the Amended Petition, Ruiz raised the two issues which had been presented in his appellate counsel's brief to the Appellate Division – 1) the admission of the hospital surveillance tapes; and 2) the detective's testimony concerning the tapes – as well as the two issues contained in the original petition.[4]

On July 10, 2006, Respondent filed an Affidavit and Memorandum in Opposition. (D.E. 8, 9)

## DISCUSSION

### I. Timeliness

AEDPA, enacted in 1996, established a strict one-year time period in which a prisoner seeking review of a state conviction may file a *habeas corpus* petition. See 28 U.S.C. § 2244(d). This section provides four different potential starting points for the running of the time limitation. See § 2244(d)(1). The relevant provisions read:

---

[3]As discussed below, the limitations period under the Anti-Terrorism and Effective Death Penalty of 1996 ("AEDPA"), 28 U.S.C. § 2244(d), expired on or about November 25, 2005. Petitioner's initial petition was clearly timely, however, under the "prison mailbox" rule set forth in Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts.

[4]Petitioner also re-numbered his claims in the Amended Petition. Points I and II of the original Petition appear as Points III and IV in the Amended Petition, while the newly-added claims appear as Points I and II. I will address Petitioner's claims in the numerical sequence of the Amended Petition, as did Respondent.

>   (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In this case, the starting point for the AEDPA limitations period is set by subsection (d)(1)(A), "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[,]" which in the Second Circuit includes an additional 90 days representing the time allowed to file a petition for certiorari even where no such petition has been filed. See Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001). The New York State Court of Appeals denied leave to appeal in this case on August 26, 2004. Thus, both parties agree that the AEDPA limitations period expired on or about November 25, 2005.[5]

Petitioner's initial petition, dated October 15, 2005, and received by the pro se office on October 24, 2005, which contained the exclusion of exculpatory evidence and sufficiency of the evidence claims now set forth as Points III and IV of the Amended Petition, was therefore timely under AEDPA, as Respondent now concedes. See Letter of John J. Sergi, Assistant District

---

[5]Petitioner asserts that the period expired on November 26, 2005. See Amended Petition, Item 14. This calculation appears not to take account of the fact that September has only 30 days. This one-day variance between Petitioner's and Respondent's calculations has no bearing on the timeliness of Petitioner's claims.

6

Attorney, dated April 20, 2009 (D.E. 17). The Amended Petition, which was dated January 24, 2006, however, was filed outside the limitations period, so the court must determine whether the additional claims included in the Amended Petition – the hospital videotapes claim and the detective's testimony claim – relate back to the original, timely Petition.

### A.    Relation Back

Relation back of an amendment to a *habeas corpus* petition is governed by Rule 15(c), Fed. R. Civ. P. See Fama v. Comm'r of Corr. Services, 235 F.3d 804, 817 (2d Cir. 2000). The Rule provides, in pertinent part:

> (1) ***When An Amendment Relates Back.*** An amendment to a pleading relates back to the date of the original pleading when:
>
> > (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading[.]

Rule 15(c)(1)(B), Fed. R. Civ. P.

An amended *habeas corpus* petition relates back to the original petition (and, where the original petition was timely, avoids dismissal pursuant to AEDPA's time limitation), "so long as the original and amended petitions state claims that are tied to a common core of operative facts." Mayle v. Felix, 545 U.S. 644, 664 (2005). An amended *habeas* petition does not relate back "when it asserts a new ground for relief supported by *facts* that differ in *both time and type* from that set forth in the original pleading." Id. at 645 (emphasis added). In Mayle, the Supreme Court explicitly rejected a broader reading of Rule 15(c)(1)(B) which would, in the habeas corpus context, equate "conduct, transaction, or occurrence" with "trial, conviction, or sentence." Id. at 663.

### 1. Petitioner's Point I

In Point I of his Amended Petition, Petitioner asserts that the trial court violated his due process rights "by admitting into evidence incomplete and misleading hospital security tapes to rebut petitioner's alibi defense." Amended Petition, Attach. "B" at 3-4 (D.E. 3)(capitalization removed). Nowhere in his Initial Petition did Ruiz address or even mention the hospital security tapes or the state's rebuttal case. Thus, in no way can Point I be construed to state a claim that is tied to a core of operative facts common to those underlying the claims he set forth in his Initial Petition. Rather, Point I of the Amended Petition asserts a new ground for relief supported by facts that differ in both time and type from those set forth in the Initial Petition. Accordingly, Point I of the Amended Petition does not relate back to the Initial Petition and is time-barred.[6]

### 2. **Petitioner's Point II**

In Point II of his Amended Petition, Petitioner asserts that "the court erred by allowing the lead detective [to] usurp the jury's function and testify that defendant was not of any of the hospital security tapes[,]" thereby depriving him of a fair trial. Amended Petition, Attach. "B" at 5. (D.E. 3) Nowhere in his Initial Petition did Ruiz address the hospital security tapes or the detective's testimony concerning their contents. Therefore, none of the arguments he raises can be construed to state a claim that is tied to a core of operative facts common to those underlying

---

[6]Respondent also argues that the substance of Point I was presented to the state courts solely as a question of state evidentiary law, and that Petitioner has consequently failed to exhaust available state remedies as to his federal constitutional claim. Respondent's Memorandum at 19-23. I do not reach the exhaustion issue because the timeliness question is dispositive.

Nor do I reach the merits of Point I. However, I note that the Second Circuit has recently reaffirmed that, where the defense has had an adequate opportunity to cross-examine and otherwise challenge the evidentiary foundation of a tape, imperfections such as those noted by Petitioner go to the weight, not the admissibility of the recorded evidence. Gibbons v. Savage, 555 F.3d 112, 122 (2d Cir. 2009).

8

the claims he set forth in his Initial Petition. Rather, Point II of the Amended Petition asserts a new ground for relief supported by facts that differ in both time and type from those set forth in the Initial Petition. Accordingly, Point II of the Amended Petition does not relate back to the Initial Petition and is time-barred.[7]

## II. Procedural Default

When a state court rendering a judgment clearly and expressly states that its judgment rests on a state procedural bar, federal review of the claim on *habeas corpus* is precluded on the basis of the procedural default. See Galdamez v. Keane, 394 F.3d 68, 77 (2d Cir. 2005), citing Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996), quoting Harris v. Reed, 489 U.S. 255, 263 (1989). This is true even where the state court has gone on to address the merits of a claim after stating that it fails on procedural grounds. Galdamez, 394 F.3d at 77, citing Harris, 489 U.S. at 264 n.10. Indeed, the Second Circuit has squarely stated that when a state court states that a claim is "not preserved for appellate review" but then goes on to rule "in any event" on the merits, the claim is defaulted. Fama v. Comm'r of Corr. Svcs., 235 F.3d 804, 810 n.4 (2d Cir. 2000).

In a case where there has been a procedural default, a federal court "may reach the merits of the claim 'only if the defendant can first demonstrate either cause and prejudice, or that he is

---

[7] As with Point I, Respondent argues that Point II was presented to the state courts solely as a question of state evidentiary law, and that Petitioner has consequently failed to exhaust available state remedies as to his federal constitutional claim. Respondent's Memorandum at 24-29. Again, I do not reach the exhaustion issue because the timeliness question is dispositive.

While I do not reach the merits, I note that there was evidence that Petitioner's appearance changed between the time of his arrest and trial, and that the trial court allowed the detective's testimony after concluding that the detective was familiar with Petitioner's appearance in August 2000. T. 1022.

9

actually innocent.'" St. Helen v. Senkowski, 374 F.3d 181, 184 (2d Cir. 2004), cert. denied, 543 U.S. 1058 (2005), quoting Bousley v. United States, 523 U.S. 614, 622 (1998).

### 1. Petitioner's Point III

In Point III of his Amended Petition, Ruiz raises issues related to his effort to call Gary Mercer as a defense witness and Mercer's invocation of the Fifth Amendment under the rubric that "the trial court erroneously denied appellant the right to introduce relevant exculpatory evidence violated petitioner's right to a fair trial." Amended Petition, Attach. "B" at 6 (D.E. 3)(capitalization removed). Apart from one new variation,[8] Point III of the Amended Petition tracks Point II of Ruiz's Supplemental Pro-Se Brief submitted to the Appellate Division, arguing that the trial court should have 1) compelled Mercer to testify; or 2) compelled the prosecution to immunize Mercer; or 3) admitted Mercer's out-of- court statement into evidence.

In response to these claims, the Appellate Division ruled as follows:

> The defendant contends that the Supreme Court should have compelled the testimony of a defense witness who invoked his Fifth Amendment privilege against self-incrimination. This argument is unpreserved for appellate review (see CPL 470.05(2)). In any event, the Supreme Court properly accepted the invocation of the privilege by the witness, since testifying would have subjected him to a real possibility of criminal prosecution (see People v. Arroyo, 46 N.Y.2d 928 (1979); People v. Faulk,

---

[8]In the Amended Petition, Ruiz argues for the first time that Mercer should have "been compelled to plead the fifth in front of the jury[.]" Attach. "B" to Am. Pet. at 7. Respondent argues that Petitioner failed to exhaust state remedies as to this claim. Memorandum at 30. According Petitioner the special solicitude due to *pro se* litigants, the undersigned views this argument as part of Petitioner's broader challenge to the trial court's response to Gary Mercer's invocation of the Fifth Amendment, and therefore deems it exhausted to the extent that Petitioner's related arguments are exhausted. See n.10 infra.

To the extent that this an independent claim, it is without merit. See United States v. George, 778 F.2d 556, 563 (10th Cir. 1985)(no Sixth Amendment violation where witness permitted to invoke Fifth Amendment privilege outside of the hearing of the jury); United States v. Deutsch, 987 F.2d 878, 883-84 (2d Cir. 1993)(court has discretion to prevent a party from calling a witness to assert Fifth Amendment before jury).

> 255 A.D.2d 333 (1998); see also Hoffman v. United States, 341 U.S. 479, 486-487 (1951)).

People in Ruiz, 7 A.D.3d 737 (2nd Dept. 2004). Under Fama v. Comm'r of Corr. Svcs., 235 F.3d at 810 n.10, this is a clear indication that the court relied on independent and adequate state procedural grounds in denying Petitioner's claims. As Ruiz has made no showing of cause for the default, nor any showing of actual innocence, the claims in Point III are procedurally barred.[9]

### 2. Petitioner's Point IV

In Point IV, Ruiz raises the challenge to the sufficiency of the evidence which was presented to the Appellate Division in Petitioner's Supplemental *Pro Se* Brief, and incorporates that brief by reference for his argument. Amended Petition, Attach. "B" at 8 (D.E. 3). The appellate court disposed of this claim as follows:

> The defendant's contention that the evidence was legally insufficient to establish his guilt beyond a reasonable doubt is unpreserved for appellate review (see CPL 470.05(2); People v. Santos, 86 N.Y.2d 869, 870 (1995); People v. Gray, 86 N.Y.2d 10, 20-21 (1995)). In any event, viewing the evidence in the light most favorable to the prosecution (see People v. Contes, 60 N.Y.2d 620 (1983)), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (see CPL 470.15(5)).

---

[9]Respondent also argues that Petitioner failed to exhaust state remedies because the claims set out in Point III were not included in the application for leave to appeal to the New York Court of Appeals submitted by Ruiz's appellate counsel. Mem. at 31. Although this is factually accurate, a procedurally defaulted claim is deemed exhausted even if it has not been presented to the highest state court. St. Helen v. Senkowski, 374 F.3d at 183.

Although I do not reach the merits, I note that the Court of Appeals has held that "[a]s a general rule, the government need not confer immunity for the defense's benefit." United States v. Skelly, 442 F.3d 94, 101 (2d Cir. 2006). As to Gary Mercer's out-of-court statement that third parties had confessed to participation in the Villarina Foods robbery, that statement constituted classic "hearsay withing hearsay."

11

People in Ruiz, 7 A.D.3d 737 (2nd Dept. 2004). As was the case with Point III, the language used by the state court indicates that this claim is procedurally defaulted, see Fama v. Comm'r of Corr. Svcs., 235 F.3d at 810 n.10, and Petitioner has not presented any basis for excusing the default. Accordingly, the sufficiency of the evidence claim set forth in Petitioner's Point IV is procedurally barred.[10]

## CONCLUSION

For the reasons set forth above, I respectfully recommend that this Petition be DISMISSED with prejudice.

Further, because Petitioner has not made a substantial showing of a denial of a federal right, I recommend that no certificate of appealability be issued. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000), *cert. denied* 531 U.S. 873 (2000).

I also recommend that the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from its order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962).

---

[10] As with Point III, see n.9 supra, Point IV is deemed exhausted because it is procedurally defaulted. See St. Helen v. Senkowski, 374 F.3d at 183.

Although I do not reach the merits, I note that Marcy Samsky's testimony identifying Ruiz as the gunman who had threatened her during the robbery, T. 524, without more, is likely sufficient to support Petitioner's conviction. See United States v. Frampton, 382 F.3d 213, 222 (2d Cir. 2004)(testimony of a "single, uncorroborated eyewitness is generally sufficient to support a conviction"), quoting United States v. Danzey, 594 F.2d 905, 916 (2d Cir. 1979).

**NOTICE**

Pursuant to 28 U.S.C. §636(b)(1), as amended, and FED. R. CIV. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to FED. R. CIV. P. 6(d), or a total of thirteen (13) working days, see FED. R. CIV. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Cathy Seibel at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Seibel.

Dated: June 25, 2009
White Plains, New York

Respectfully Submitted,

Paul E. Davison
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

>The Honorable Cathy Seibel
>United States Courthouse
>300 Quarropas Street
>White Plains, New York  10601

>Johnny Ruiz (01-A-6383), *pro se*
>Green Haven Correctional Facility
>P.O. Box 4000
>Stormville, NY 12582-0010

>John J. Sergi, Esq.
>Joseph M. Latino, Esq.
>Anthony J. Servino, Esq.
>Office of the District Attorney of Westchester County
>Westchester County Courthouse
>111 Dr. Martin Luther King, Jr. Blvd.
>White Plains, NY 10601